UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **RELIASTAR LIFE INSURANCE COMPANY,** )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>**ROBERT W. CAVINESS, DALLAS C. CAVINESS, and RHONDA CAVINESS PIERCE (in her capacity as guardian for DEVIN L. CAVINESS, a minor),** )<br>)<br>)<br>)<br>)<br>)<br>  Defendants. ) | **CASE NO.: 2: 07-CV-1084** |

### DEFENDANT ROBERT W. CAVINESS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

COMES NOW, Robert Caviness, by and through undersigned counsel, and responds to Motion for Summary Judgment filed on behalf of Dallas C. Caviness and Rhonda Caviness in her capacity as guardian for D.C., a minor (hereinafter "Caviness Defendants") in the above-styled cause. In support thereof, Robert Caviness presents the following brief in support of his response to Motion for Summary Judgment:

### INTRODUCTION

At the time of his death, George Caviness ("George Caviness") held a life insurance policy through ReliaStar Life Insurance Company (hereinafter referred to as "ReliaStar") through a life insurance benefits group. George Caviness designated his brother, Robert Caviness, as the sole beneficiary of the $40,000 proceeds. George Caviness' two sons also claimed an interest in the proceeds pursuant to a provision in the marital settlement agreement

reached between their father and his former wife, their mother, in 2004. ReliaStar filed an Interpleader due to competing claims for those benefits and requested this Court to determine the rightful and legal owner of the life insurance proceeds.

## FACTS

1. ReliaStar Insurance Company issued group life insurance policy 63306-2-GAT (the "Group Policy") to Policyholder, Trustees of the National Elevator Industry Health Benefit Plan ("NEIHBP"), as part of the NEIHBP's multi-employer benefit plan as that term is defined by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C § 1001 *et seq.* (Complaint in Interpleader, ¶ 7)

2. George Caviness was an employee of a participating employer as those terms are defined by the Group Policy and was eligible for life insurance coverage under the Group Policy beginning on September 1, 1992. (Complaint in Interpleader, ¶ 8)

3. George Caviness and his then wife, Rhonda, had two sons, namely Dallas and D.C. Caviness. George and Rhonda Caviness divorced in 2004 in Shelby County, Alabama. (Exhibit A, Final Judgment of Divorce) A marital settlement agreement ("Agreement") reached between George and Rhonda Caviness on January 23, 2004 was incorporated into the February 23, 2004 Final Judgment of Divorce. (Exhibit B, Agreement of the Parties)

4. As a part of the Agreement, the parties agreed that the "[H]usband shall maintain and name the children the irrevocable beneficiaries of a policy of life insurance on his life provided through his employer for so long as there is an obligation for child support or college expenses to be paid." (Exhibit B, ¶ 4(d))

5.      As a part of the Agreement, the husband was to provide to the wife proof in writing from the insurance company issuing the policy that life insurance coverage was in full force and effect and that all premiums had been paid. (Exhibit B, ¶ 4(d))

6.      The Agreement provided that George Caviness would pay child support in the amount of $488 per month for the minor child D.C. until such time as he reached the age of 19, married or became self-supporting, whichever first occurred. (Exhibit B, ¶ 2(a))

7.      The birth date of the minor child D.C. is April 2, 1991. (Exhibit B, ¶ 1(a)) The minor child D.C. had not reached the age of majority as of the death of George Caviness.

8.      The birth date of Dallas Caviness was August 21, 1985. (Exhibit B, ¶ 1(a)) Prior to his father's death, Dallas reached the age of majority. At the time of the Caviness' divorce, Dallas Caviness was working and contributing to his own support. The Agreement provided that no child support was to be paid on his behalf. (Exhibit B, ¶ 2(a))

9.      On December 13, 2004, George Caviness designated his brother, Robert Caviness, as the sole beneficiary of the ReliaStar life insurance policy secured through a group policy as a member of the National Elevator Industry ("NEI") group. (Complaint, ¶ 8)(Exhibit C, Enrollment and Information Change Form)

10.     George Caviness died on January 25, 2007. (Exhibit D, Death Certificate)

11.     Forty thousand dollars ($40,000) was due and payable as life insurance benefits under the Group Policy as a result of the death of George Caviness. (Complaint in Interpleader, ¶ 13)

12.     No change was made to the beneficiary designation between December 13, 2004, and George Caviness' death. Consequently, the named beneficiary was Robert Caviness. (Complaint ¶ 15)

13. Dallas Caviness filed a claim for the life insurance benefits insuring the life of George Caviness claiming entitlement by virtue of the Final Judgment of Divorce and Agreement of the Parties entered in the Circuit Court of Shelby County, Alabama. (Complaint in Interpleader, ¶ 17)

14. Rhonda Caviness Pierce, in her capacity as mother and guardian of D.C., a minor, filed a claim for the life insurance benefits on behalf of D.C. by virtue of the Final Judgment of Divorce. (Complaint in Interpleader, ¶ 18)

15. Robert W. Caviness filed a claim for the life insurance benefits insuring the life of George Caviness, claiming entitlement by virtue of his status as the named beneficiary. (Complaint in Interpleader, ¶ 16)

16. On December 12, 2007, ReliaStar Insurance Company filed a Complaint in Interpleader with this Court based upon competing claims for the life insurance proceeds. (Complaint in Interpleader)

17. On or about December 18, 2007, the Court entered an order granting ReliaStar's request to deposit the life insurance proceeds in the court's registry. (Docket # 5, December 18, 2007 Order)

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate if "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) The party seeking summary judgment bears the initial responsibility to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex* at 324. A court ruling on motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. See e.g., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003). (The evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant.)

<u>**BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**</u>

**I.    THE CAVINESS DEFENDANTS FAILED TO SHOW THAT GEORGE CAVINESS WAS ENROLLED WITH THE NEI LIFE INSURANCE GROUP AT THE TIME OF DIVORCE, PRECLUDING HIM FROM MAINTAINING THE POLICY PURSUANT TO THE AGREEMENT**

In 2004, George Caviness agreed to *maintain* a policy of life insurance on his life provided through his employer naming the children as the irrevocable beneficiaries so long as there was an obligation to pay child support or college expenses. (Exhibit B, ¶ 4(d))  There is no evidence before this Court that George Caviness was insured at the time he entered into the January 23, 2004 settlement agreement.

On or about April 3, 2008, counsel for Robert Caviness received a copy of claim file regarding the George Caviness matter. (Exhibit F, April 3, 2008 correspondence from George W. Walker, III to counsel for the Defendants)  The sole Enrollment Form for Life Insurance Benefits was dated December 13, 2004, which was ten (10) months following the Caviness' divorce (Exhibit C – Beneficiary Designation) in which he named his brother, Robert Caviness, as the sole beneficiary and also acknowledged that his son, D.C. was an eligible beneficiary.

(Exhibit C)  Because there is no evidence that George possessed the NEI life insurance policy at the time of the divorce, he could not have *maintained* the life insurance policy in compliance with the Agreement.  Therefore, any interest the Caviness Defendants may have had in George Caviness' life insurance proceeds must be defeated.

## II.   THE DEFENSE OF LATCHES DEFEATS CAVINESS DEFENDANTS' CLAIMS

In January 2004, George Caviness agreed to "provide to the Wife proof, in writing, from the insurance company issuing said policy that said coverage is in full force and effect and that all premiums due have been paid."  (Exhibit B, ¶4(d))  The Caviness Defendants failed to show that Rhonda Caviness, the former wife followed through with the terms of the Agreement and confirmed that George Caviness had secured a life insurance policy, or that, had the policy been in effect, the minor child was named as the irrevocable beneficiary of the policy.  Therefore, the D.C.'s guardian failed to assert her right on behalf of her minor child to enforce the life insurance provision.

The doctrine of laches was recognized as early as 1914 as more than a mere delay, but a delay that works a disadvantage to another.  *Hauser v. Foley & Co.*, 67 So. 252, 253 (Ala. 1914).  More recently, cases have required the person asserting the defense of laches to show "(1) that the claimant delayed in asserting his or her right, (2) that the delay was inexcusable, and (3) that the delay caused the person asserting the defense undue prejudice."  *Hankins v. Crane,* 979 So.2d 801, 811 (Ala.Civ.App. 2007).  Our Supreme Court's explanation of the doctrine is instructive:

> " 'Laches' is defined as neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar." See *Black's Law Dictionary* 787

(5th ed. 1979), cited in *Mills v. Dailey*, -- So.2d.--, 2008 WL 2623930 (Ala.Civ.App.)

In the Caviness Defendants' Motion for Summary Judgment, the Affidavit of Rhonda Caviness Pierce stated that at the time of George Caviness' death, she was the sole means of support for D.C. (Exhibit F, Affidavit of Rhonda Caviness Pierce, ¶ 4). The neglect of her obligation to confirm that life insurance benefits were in place to provide for her minor child was inexcusable. The neglect further damaged Robert Caviness, who, after learning from his brother that he was named as the sole beneficiary of both his life insurance and pension benefits, finds himself in two federal lawsuits and unable to follow through with his brother's wishes for the distribution of his estate.[1] Robert Caviness has been damaged as a result of the neglect of Rhonda Caviness as guardian for D.C. and asserts the defense of laches to bar the claims of Caviness Defendants to George Caviness' life insurance proceeds.

### III. CAVINESS DEFENDANTS' RIGHTS TO LIFE INSURANCE PROCEEDS IS BARRED, AT LEAST IN PART, BY THE PURPOSE OF LIFE INSURANCE REQUIREMENT

Case law is clear that the purpose of requiring a parent to maintain life insurance is to provide for a minor child in the event of the parent's untimely death. *Jordan v. Jordan*, 688 So.2d 839 (Ala. Civ. App. 1997) (refusing to require trial courts to state their reasons for requiring supporting parents to maintain life insurance for the benefit of their children "because the reason will always be identical…quite obviously, to insure that minor children will receive

---

[1] The Caviness Defendants have also asserted their rights to George Caviness' pension benefits. Faced with competing claims for the pension benefits, Trustees of the National Elevator Industry Pension Fund filed a Complaint in Interpleader with the United States District Court, for the Middle District of Alabama, Case No.: 2:08-cv-162-MEF.

1123135.doc                     7

support in the event the supporting parent dies." *Jordan,* id. at 842.  In *Jordan*, Judge Crawley wrote an opinion concurring in part and dissenting in part wherein he agreed with the majority that a trial court could order that a parent name the minor child or children as beneficiaries as a deviation from the guidelines.  ("[A]s the majority points out, the basic reason behind such an award is the desire to provide for the minor child in the even of the parent's untimely death.")  However, he further argued that "[T]he trial court should not impose an additional financial obligation on a parent simply because of the divorce, but should consider the need for and the impact of the life insurance beneficiary provision…" and "should then consider the amount of life insurance that would be necessary to provide support for the minor child if the parent were to die.  That amount would differ depending on the age of the child, the needs of the child, and the other financial resources available to the child."  Id at 845.

The reasoning behind the purpose of the life insurance provision is clearly to secure child support obligations.  In following that reasoning and applying Judge Crawley's considerations to the present case, Dallas Caviness is due no life insurance proceeds and D.C. is due those proceeds necessary to meet his father's child support obligations should he be living.

      a.    <u>Dallas Caviness not Entitled to Life Insurance Benefits</u>

George Caviness' oldest son, Dallas, had become emancipated as of the date of divorce.  His parents recognized and agreed that no child support was due him at the time of divorce.  (Exhibit B, ¶¶ 1, 2)  Further, the Agreement provided that the children be named beneficiaries of a life insurance policy *so long as there is an obligation for child support or college expenses.*  (Exhibit B, ¶ 4(d))  At no time since the divorce was George Caviness responsible for child support or colleges expenses of Dallas Caviness.  Further, Dallas is currently in the military and there is no evidence that Dallas ever attended college. (Exhibit E, ¶¶ 6-7)

The general rule in Alabama is that a divorced, noncustodial parent has no duty to contribute support to a child after the child has reached the legislatively prescribed age of majority.  Furthermore, trial courts have no continued jurisdiction over the parties or issues to a divorce decree to amend or modify said agreement to later require support for a post-minority child once the child has reached the prescribed age of majority.  *See Whitten v. Whitten*, 592 So. 2d 183 (Ala. 1991).

Therefore, Dallas Caviness is not entitled to any proceeds of George Caviness' life insurance benefits.

      b.    <u>D.C. entitled to an equitable share of insurance benefits to the extent he is entitled to child support and college expenses</u>

The parties' youngest son, D.C. was fifteen years and nine months old at the time George Caviness died.  (Exhibit B, ¶ 1(a))  Child support for D.C. was set at $488.00 per month "until such time as [he] reached the age of nineteen (19), marry or become self-supporting, whichever shall first occur."  (Exhibit B, ¶ 2(a))  Additionally, the parents were equally responsible for one-half of expenses related to his college education with certain requirements being met for the continued support.  (Exhibit B, ¶ 3)

In following the intent of the parties in the Agreement, a life insurance policy was to be maintained "so long as there is an obligation for child support or college expenses to be paid" and "with the undisputed purpose of life insurance security."  Robert Caviness recognizes his brother's obligations to provide for his son's child support obligations.

In *Frawley v. U.S. Steel Mining Co.*, 496 So.2d 731 (Ala. 1986), the Alabama Supreme Court found that the natural daughter of the deceased who had been adopted by her stepfather was entitled to an equitable interest in proceeds of a life insurance policy, even though the policy

was secured following the natural parents' divorce. Id. at 736. However, because the amount of life insurance coverage agreed upon and ordered to be secured by the deceased was $10,000 and the subsequent policy amount was $60,000, the daughter was only awarded an equitable interest of $10,000.

In following the holding of *Frawley* in this present case, the trial court is faced with the decision of how much, if any, of George Caviness' life insurance proceeds should be awarded to D.C. due to the fact that no life insurance policy was specified, nor was the amount of coverage to be secured. The Alabama Supreme Court has held that "in a declaratory judgment action, 'the cost ruling is entirely discretionary.'" *Frawley*, Id., *City of Birmingham v. City of Fairfiled*, 396 So.2d 6921, 697 (Ala. 1981).

Should this Court determine that D.C. is entitled to an equitable interest in the life insurance proceeds, and considering the purpose of a provision for life insurance is to secure child support for minor children in the event of the death of a parent obligated to pay child support, Robert Caviness suggests that D.C.'s equitable interest in the life insurance proceeds should be that of the balance of the three years and three months until his nineteenth birthday for child support obligations and prospective college expenses.

## CONCLUSION

For the foregoing reasons, Robert Caviness respectfully requests this Honorable Court to deny the Caviness Defendants' Motion for Summary Judgment.

Respectfully submitted this the 24th day of July, 2008.

>                          */s/ Terrie S. Biggs*
>                          **TERRIE S. BIGGS**

**OF COUNSEL:**
**CAPELL & HOWARD, P.C.**
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 241-8291
tsb@chlaw.com

**Thomas H. Claunch, III, Esq.**
**HARDING & CLAUNCH, LLC**
2800 Zelda Road, Suite 100-9
Montgomery, AL  36106
Telephone: (334) 356-6070
Facsimile: (334) 356-6040
tclaunch@knology.net


## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2008, I electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the following:

George Walton Walker, III
COPELAND, FRANCO, SCREWS & GILL
P.O. Box 347
Montgomery, Alabama  36101-0347

John W. Dodson
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama 35243-0189


*/s/ Terrie S. Biggs*
OF COUNSEL